```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION
```

| | | |
|---|---|---|
| UNIVERSITY OF CHICAGO MEDICAL CENTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 15 C 08765 |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 743, | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff University of Chicago Medical Center ("UCMC") fired Lester Land ("Land"), who is represented by defendant International Brotherhood of Teamsters, Local 743 ("the Union"). UCMC filed this suit pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.*, seeking vacatur of an arbitration award reinstating Land's employment. The parties' have filed cross-motions for summary judgment. In addition, the Union has moved for attorneys' fees and an award of back pay and benefits. For the reasons discussed below, the Union's motion for summary judgment is granted and UCMC's motion is denied. The Union's request for attorneys' fees and back pay is denied.

I.[1]

Land began working as a Custodial Assistant in UCMC's Environmental Services Department in 1988. On January 25, 2013, one of Land's co-workers, a Pharmacy Technician named Tyrone Murphy ("Murphy"), sent an email to UCMC's Human Resources (HR) Department. He reported that on four separate occasions, Land had referred to his supervisor, Sandra Gonzalez ("Gonzalez"), as a "bitch" and stated that he wanted to choke or strangle her. The statements were made privately to Murphy. Gonzalez was never aware of them.

On January 29, 2013, Land was suspended pending an investigation. He was interviewed by HR personnel the following day. After completing its investigation, on March 4, 2013, UCMC terminated Land's employment. On March 6, 2013, the Union filed a grievance under the parties' collective bargaining agreement (CBA). After trying unsuccessfully to resolve the dispute through the preliminary steps outlined in the CBA, the Union demanded arbitration.

On August 14, 2015, an arbitrator issued a decision ordering Land's reinstatement. The arbitrator found Murphy to be a credible witness and concluded that Murphy's concern regarding

---

[1] The facts are not in dispute, but I am required to accept the arbitrator's factual findings in any event. *See, e.g.*, *Chicago Bears Football Club, Inc. v. Haynes*, 816 F. Supp. 2d 534, 537 (N.D. Ill. 2011). Accordingly, the facts related here are taken from the arbitrator's opinion and award.

Land's threats was genuine. The arbitrator found that Land's testimony did "little to generate a conclusion that he was consistently telling the truth." Arbitration Opinion & Award at 13. The arbitrator expressed skepticism concerning Land's testimony that he had never referred to Gonzalez a bitch and that he had no recollection of telling Murphy that he wanted to choke or strangle Gonzalez. Moreover, although Land claimed that he had never been disciplined by Gonzalez, the record showed that she had in fact counseled him three times. The arbitrator therefore concluded "from the evidence in the record that at the very least, [Land] told Murphy on four occasions that he wanted to strangle or choke Ms. Gonzalez." *Id*. at 15.

Nevertheless, citing other evidence in the record, the arbitrator concluded that just cause was lacking for Land's termination. He stated his reasons as follows:

> First, by the time of his discharge the Grievant had accrued a 24-year record of acceptable service to the Medical Center. Second, there is not a hint of evidence in the record to suggest that he ever threatened another employee or supervisor. Third, none of his performance evaluations reveal that he was ever counseled about having a temper or engaging in threatening behavior. Fourth, even after being fired and knowing about Murphy's allegations against him, he did not retaliate or threaten Murphy. Fifth, there is no evidence that he ever threatened Gonzalez directly or engaged in any behavior toward her which could be considered intimidating. And finally, there is no evidence that she even knew about the Grievant's comments to Murphy, or that she felt threatened or intimidated by the Grievant himself.

3

*Id*. at 16.

Summing up his conclusion, the arbitrator stated: "On balance, the record has convinced me that while [Land's] comments in private conversations with Murphy were very serious, they did not rise to a level of seriousness sufficient to justify his discharge." *Id*. Although the award directed Land's reinstatement, it denied the Union's request for back pay and benefits. UCMC contends that the arbitrator's decision should be vacated because it is contrary to Illinois' public policy against violence in the workplace.

II.

"It is well settled that judicial review of arbitration awards is extremely limited." *Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 959 F.2d 685, 687 (7th Cir. 1992). The courts' deference to arbitration decisions is "grounded in the federal statutes regulating labor-management relations," which "reflect a decided preference for private settlement of labor disputes without the intervention of government." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37 (1987). Nonetheless, a narrow exception to this rule has been recognized in cases where an arbitration award violates public policy. This exception is "a specific application of the more general doctrine, rooted in the common

4

law, that a court may refuse to enforce contracts that violate law or public policy." *Misco,* 484 U.S. at 42.

This exception applies only where the public policy in question is "well defined and dominant" and can be "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983) (quotation marks omitted). Moreover, even when the public policy is sufficiently defined and dominant, showing that the policy is violated by an arbitrator's decision has proven to be a formidable task. The Supreme Court has not defined precisely what must be shown to establish that an arbitrator's award violates public policy. In its most recent pronouncement on the issue, the Court opined only that "in principle . . . courts' authority to invoke the public policy exception is not limited solely to instances where the arbitration award itself violates positive law." *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 63 (2000). Nevertheless, courts have repeatedly emphasized the limited and narrow scope of the exception, and it has been successfully invoked only very rarely. *See, e.g., Maggio v. Local 1199*, 702 F. Supp. 989, 991 (E.D.N.Y. 1989) ("Although Courts have long recognized their ability to refuse confirmation of an arbitrator's award on the

ground that enforcement would violate public policy, the ... bias in favor of labor arbitration has resulted in the rare application of the public policy doctrine.").

Here, the parties initially dispute whether Illinois has articulated a sufficiently definite and dominant public policy against workplace violence. I need not decide that question, however, for even assuming the existence of such a policy, UCMC has not established that it is violated by Land's reinstatement. UCMC cites several respects in which it believes that the arbitrator's decision is contrary to the public policy against workplace violence. Specifically, it argues that if Land is reinstated, he may make similar statements about another supervisor (Gonzalez, for reasons unrelated to this litigation, is no longer employed at UCMC). It also raises the possibility that Land may act on his threatening statements, and that other employees may be deterred from reporting threats or acts of violence if Land is reinstated.

These same arguments have been advanced by employers in other cases, and they have consistently been deemed insufficient to show that a grievant's reinstatement violates a public policy against workplace violence. Notably, UCMC has not cited a single case, and I have found none, in which a court has found the public policy against workplace violence to have been violated by an employee's reinstatement. Indeed, even in cases involving

conduct ostensibly more threatening than Land's, courts have steadfastly refused to vacate arbitration awards based on public policy.

In *United States Postal Service v. National Association of Letter Carriers*, 839 F.2d 146 (3d Cir. 1988), for example, a postal employee, Jackson, was terminated after firing several gunshots into a postmaster's unoccupied car. The arbitrator ordered Jackson's reinstatement on the basis of mitigating circumstances, including the fact that he had shown no violent tendencies during his previous thirteen years of employment, that he had been passed over for promotion, and that, despite the postmaster's reassurances that a promotion would be forthcoming, he had been informed on the morning before the incident that he would not be promoted after all. The Third Circuit reversed the district court's vacatur of the award, stating that the arbitrator had "determined in the scope of his authority that the facts indicated that upon return to work Mr. Jackson showed no proclivity to further aggression," and that consequently, "a policy in favor of protecting co-workers and customers from Mr. Jackson's violent conduct (assuming, *arguendo,* that such a policy is properly ascertained) does not *require* his discharge for its fulfillment." *Id*. at 149-50.

Courts have reached the same result in cases involving the reinstatement of employees discharged for engaging in other serious forms of threatening conduct in the workplace. *See, e.g.*, *Alabama Gas Corp. v. Gas Fitters Local Union No. 548 of United Ass'n, AFL-CIO-CLC*, No. 2:13-CV-580-WKW, 2014 WL 3655713 (M.D. Ala. July 23, 2014) (grievant made "troubling statements . . . that indicated a potential for workplace violence" and admitted to having a gun in his vehicle on employer's premises); *Rohm & Haas Co. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC*, 781 F. Supp. 2d 251, 256 (E.D. Pa. 2011) (grievant made threatening comments directly to coworker, and also privately told friends while brandishing a knife that he had friends who could "take care" of coworker); *Metalcraft of Mayville, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers Local Lodge No. 2053 of Dist. Lodge 121*, No. 08-C-053, 2008 WL 2714671, at *2 (E.D. Wis. July 7, 2008) (grievant made threatening statements and alluded to her possession of a gun).

In each of these cases, the arbitrator made a determination, if only implicitly, that the grievant was unlikely to engage in misconduct in the future. As one court has put it: "a court would be hard-pressed to find a public policy barring reinstatement in a case in which an arbitrator, has, expressly or by implication, determined that the employee is ...

not likely to commit an act which violates the public policy in the future." *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200, 1213 (9th Cir. 1989); *see also Chrysler Motors*, 959 F.2d at 688-89 (quoting *Stead*).

The same is true here. All of UCMC's arguments spring from speculation regarding the possibility that Land might make similar statements, or act on them, if returned to work. But the arbitrator's decision embodies a contrary determination. The weight that the opinion assigned to the fact that Land had no prior incidents of threatening conduct, and to the fact that Land did not retaliate after being terminated, show that the arbitrator regarded Land's comments about Gonzalez as an aberration and that returning him to work would not pose a threat to others.

The fact that the arbitrator did not make this finding explicitly is of no moment. As noted above, the determination that an employee "is not likely to commit an act which violates the public policy in the future" may be made "expressly or by implication." *Stead Motors*, 886 F.2d at 1213; *Chrysler Motors*, 959 F.2d at 688; *see also Alabama Gas Corp.*, 2014 WL 3655713, at *5 (because arbitrator "did not find nor conclude that [the grievant] was a danger to his co-workers" vacating reinstatement award would require court to ignore arbitrator's "factual

9

findings and conclusion . . . and speculate that the assumed threats would translate into actual violence in the workplace"); *Metalcraft of Mayville*, 2008 WL 2714671, at *2 (refusing to vacate reinstatement award because arbitrator made no finding that grievant would be a threat to herself or others in the future).

UCMC asks me to consider a January 2013 incident that reportedly took place a few weeks prior to the incident leading to Land's termination, in which he was observed smoking in an unauthorized area and using profanity when speaking to security personnel. Citing an affidavit attached to its response to the Union's Local Rule 56.1 Statement of Additional Facts, UCMC claims that Land received a final written warning and suspension in connection with the incident. UCMC acknowledges, however, that this evidence was not before the arbitrator. It is well settled that, just as I am not free to disagree with the arbitrator's factual findings, I also am not permitted to consider evidence not considered by the arbitrator. *See, e.g.*, *Misco,* 484 U.S. at 39-40 (reviewing court could not refuse to enforce arbitrator's award based on his decision not to consider evidence unknown to the employer at the time he was fired); *Chrysler Motors*, 959 F.2d at 689 n.4 (7th Cir. 1992).[2]

---

[2] This does not mean that UCMC is unable to pursue action against Land in connection with the incident. It means only that the

The arbitration award does not condone Land's conduct. On the contrary, the arbitrator describes Land's statements about Gonzalez as "very serious." In addition, the opinion denies Land back pay and benefits for more than two years. In any event, the question before me is not whether I agree with the arbitrator's decision, but only whether that decision violates public policy. Given the arbitrator's factual findings, and the narrow scope of the public policy exception, I am unable to reach that conclusion. Accordingly, as to the issue of Land's reinstatement, I deny UCMC's motion for summary judgment and I grant the Union's motion.

### III.

In addition to moving for summary judgment, the Union has moved for attorneys' fees, arguing that UCMC's suit has no merit and was brought for purposes of harassment. "Although § 301 does not expressly authorize the award of attorney's fees, a prevailing party is entitled to such fees if the opponent's suit has no merit or is 'frivolous,' that is, brought in bad faith to harass rather than to win." *Chrysler Motors*, 959 F.2d at 689-90. Although I have found UCMC's position unpersuasive, I do not

---

matter cannot be pursued in this proceeding. *Chrysler Motors*, 959 F.2d at 763 (7th Cir. 1992). According to the affidavit filed by UCMC, a grievance was filed over the warning but was never resolved under the CBA's grievance procedures and was never submitted to an arbitrator.

11

find it frivolous. Nor do I find any reason to believe that UCMC has brought this suit in bad faith or to harass the Union. Accordingly, the Union's request for attorney's fees is denied. *See, e.g.*, *Local 458-3M, Graphic Commc'ns Int'l Union, AFL-CIO v. Carqueville Printing Co.*, No. 91 C 5267, 1992 WL 132854, at *9 (N.D. Ill. May 29, 1992) (Rovner, J.) (denying attorneys' fees).

I also deny the Union's request for back pay and benefits. The Union offers no argument in support of its request and indeed cites no authority indicating that it is within my power to grant such relief. *Cf. Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local No. 731*, 790 F. Supp. 785, 793-94 (N.D. Ill. 1992) ("[The Union] asks for back pay from July 9, 1991 forward because that is the date as of which [the grievant] should have been reinstated. But Union offers no authority (nor has this Court unearthed any in its own brief research) for the proposition that a district court may so enlarge an arbitrator's award."). Thus, insofar as the Union seeks attorney's fees and back pay, its motion is denied.

IV.

For the reasons discussed above, UCMC's motion for summary judgment is denied and the Union's motion for summary judgment is granted. The Union's motion for attorneys' fees and back pay is denied.

**ENTER ORDER**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: July 11, 2016